UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERRY ISON, | |
| Plaintiff, | |
| -against- | |
| PA KACHAPILLY, ROSA ROSARIO, L. JACKSON, L. MALIN, J. MANUEL, RACHEL SEQUIN, MICHAEL CAPRA, ANTHONY ANNUCCI | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __03/31/2025__

No. 23-CV-3402 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Jerry Ison ("Plaintiff") commenced this action seeking redress for incidents occurring during his incarceration at Sing Sing Correctional Facility. In his Amended Complaint ("Am. Compl."), Plaintiff asserts constitutional claims under the First, Eighth, and Fourteenth Amendments (Claims I–III), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504") (Claims IV–V) against PA Kachappilly ("Kachappilly"), Nurse Administrator Rosa Rosario ("Rosario"), Deputy Of Medical Services L. Jackson ("Jackson"), Deputy Superintendent of Programs L. Malin ("Malin"), Program Committee Chairperson J. Manuel ("Manuel"), Acting Director of DOCCS Grievance Programs Rachel Sequin ("Sequin"), Superintendent Michael Capra ("Capra"), and Acting Commissioner of DOCCS Anthony Annucci ("Annucci") (collectively, "Defendants"). Plaintiff is seeking to recover $500,000 in compensatory damages from each Defendant in their individual and official capacities, as well as regulatory relief. (Am. Compl. at 5.)

Presently before the Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure

1

to state a claim upon which relief can be granted, respectively. For the following reasons, Defendants' Motion to Dismiss is GRANTED in its entirety.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed his original complaint on April 21, 2023, alleging violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution, as well as violations of the ADA and Section 504. (ECF No. 1.)[1] On October 10, 2023, Plaintiff filed an Amended Complaint. (ECF No. 25.)

Defendants sought leave to file a Motion to Dismiss Plaintiff's Amended Complaint. On July 17, 2024, the parties concluded briefing Defendant's Motion to Dismiss Plaintiff's Amended Complaint: Defendants filed their Memorandum of Law in Support ("Defs.' MoL.") (ECF Nos. 49, 50.), with corresponding exhibits ("Defs.' Ex.") and reply ("Reply") (ECF No. 52). Plaintiff filed his Memorandum of Law in Opposition to Defendants' motion ("Pltf.'s MoL.") (ECF No. 51.), with corresponding exhibits ("Pltf.'s Ex.").

## FACTUAL BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the Amended Complaint and draws all reasonable inferences in Plaintiff's favor, as summarized below.

Plaintiff has been incarcerated for the last twenty years and at the time of the following events, Plaintiff was incarcerated at Sing Sing Correctional Facility in Ossining, New York. On October 7, 2020, Plaintiff received a letter from Defendant Manuel, Program Committee Chairperson at Sing Sing, informing him that following the findings from his medical evaluation,

---

[1] Based on the filing of the Amended Complaint on ECF, it is unclear to the Court if Plaintiff attached exhibits from the original complaint (ECF No. 1) to the Amended Complaint. Therefore, any references to exhibits referenced in the Complaint will reference ECF No 1.

he was deemed ineligible for employment in the mess hall service at Sing Sing. (Am. Compl. at 3.) Plaintiff avers that his rights secured by the Constitution, the ADA, and Section 504 were violated by being denied employment within Sing Sing's mess hall. (*Id.* at 3, 5.)

Plaintiff's medical history includes conditions such as a scoliosis curvature of his spine, an ulnar nerve entrapment in his right arm, a left brachial plexus injury with chronic atrophy, a gunshot wound to his right knee, along with his right knee being shorter than his left knee. (*Id*. at 11.) According to Plaintiff's Opposition to Defendants' motion, he has had these conditions for the past twenty years and will have them "for the rest of [his] life." (Pltf.'s MoL. at 1.)

Additionally, Plaintiff contends that he had been approved and able to work in the mess halls at other facilities during his long tenure of incarceration without issue. (*Id.*) While he was denied employment in the mess hall at Sing Sing*,* Plaintiff was not denied employment all together and was employed as a gym porter. (*Id.* at 2.)

According to the Amended Complaint, on October 11, 2021, over a year after the initial correspondence from Defendant Manuel informing him that he was not eligible for employment in the mess hall, Plaintiff filed an Inmate Grievance Complaint ("IGC") with the Inmate Grievance Program at Sing Sing. (ECF No. 1 at 38.) In his IGC, Plaintiff inquired as to why the medical team denied his access to the mess hall employment program. (*Id.*) On October 18, 2021, nonparty Q. Quick, Supervisor of the Inmate Grievance Program, responded to Plaintiff's grievance and informed him that he was "questioning the wrong area" and advised him to write to the Program Committee and to his provider to determine what was preventing his medical clearance. (*Id*. at 30.)

Plaintiff filed his secondary grievance complaint on October 21, stating that he was informed that his "handicap" was preventing him from being placed in the mess hall, and that he was filing a grievance in light of such alleged "discrimination." (*Id.* at 45.) Quick followed up on

November 29, confirming that Plaintiff's provider, Defendant Kachappilly, had not cleared him for the mess hall due to his injuries to his arms. (*Id.* at 49.) Quick additionally asked Plaintiff how he would like to proceed, effectively confirming whether or not he was following through with his second grievance. (*Id.*) Although it is unclear in both the original or Amended Complaint how Plaintiff responded to this correspondence, on December 16, 2021, Plaintiff received correspondence from Quick alerting him that his second grievance was under investigation and that he would be informed of the resolution upon the investigation's completion. (*Id.* at 46.) On December 23, 2021, the grievance committee's investigation led to the finding and recommendation that Plaintiff should be re-evaluated for assignment to the mess hall. (*Id.* at 47.) Plaintiff, in response, was asked to respond to the grievance committee's finding by checking one of four boxes on the document he was given with their decision. (*Id.*) Of his four options, Plaintiff checked off "I agree with the IGRC response and wish to appeal to the Superintendent." (*Id.*) Thus, confirming that Plaintiff believed that reasonable accommodations should be made to the program and that he should be reevaluated for placement. (*Id.*)

Almost simultaneously to his initial correspondence with Quick, on November 15, 2021, Plaintiff corresponded with Defendant Jackson, Deputy of Health Services, to inquire about his desire to work for the food service program and to see why he has not been given medical clearance to do so. (*Id.* at 27.) Jackson responded on November 26, 2021, reiterating that Plaintiff was deemed unsuitable for employment in the mess hall by his medical provider. (*Id.* at 44.)

Based on the materials submitted to the Court, it is unclear whether Plaintiff was ever reevaluated by his provider regarding his disabilities. On December 13, 2021, Plaintiff received a response to his appeal from the Superintendent of Sing Sing, Defendant Capra, denying his second grievance, stating that no evidence to support his allegations of discrimination were found. (*Id.* at

37.) Further, the Superintendent stated that "grievant['s] provider has determined the left and right arm Paraparesis and Neuropathy is the reason grievant will not be cleared to work in the food service program." (*Id.*) On January 23, 2022, Plaintiff wrote back to the Superintendent stating his desire to appeal this decision because, as previously noted, he had been able to work in mess halls while incarcerated at other facilities, and believed he was being denied employment at Sing Sing for discriminatory reasons related to his disabilities. (*Id.*)

Based on the foregoing, Plaintiff brings claims under the Constitution of the United States, as well as the Americans with Disabilities Act and Rehabilitation Act.[2]

## LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). Further, "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F. 3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 200)). When this Court assesses whether there is subject matter jurisdiction, it must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), however, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Schiavone v. New York State Office of Rent Administration,* 2018 WL 5777029, 1, 2 (S.D.N.Y. 2018) (quoting *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

---

[2] Plaintiff, in his original complaint, makes mention of an ADA claim regarding seeking a medical shower accommodation in 2019. In his Amended Complaint, he fails to make mention of such claim. For this reason, the Court will not address Plaintiff's alleged claim regarding the medical shower pass.

***Federal Rule of Civil Procedure 12(b)(6)***

Under Federal Rule of Civil Procedure 12(b)(6), dismissal would be proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Whenever a complaint contains well pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679. The crucial consideration is whether the plaintiff has pled facts sufficiently enough to push the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. Thus, a motion to dismiss is to be denied in instances where the allegations pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Additionally, "a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the court is 'not bound to accept as true legal conclusion couched as a factual allegation,' or to credit 'mere conclusory statements' or '[threadbare] recitals of the elements of a cause of action.'" *Schiavone*, WL 5777029 at 2 (quoting *Iqbal*, 556 U.S. at 678).

***Pro se Pleading Standard***

In instances like the one currently before this Court where *pro se* plaintiffs are concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). So much so that courts are to interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). However, this does not relieve a *pro se* plaintiff from having to contain factual allegations that sufficiently "raise a right to relief above the speculative level" in their pleadings. *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp 2d 218, 224

(S.D.N.Y. 2010). At the same time, the duty of the court to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

### I.    Constitutional Claims

#### a.    First Amendment Retaliation Claim

*Pro se* Plaintiff brings a First Amendment retaliation claim against Defendants, alleging that Defendants denied him employment in the mess hall because he filed a grievance with the IGC. Defendants oppose this allegation and suggest that Plaintiff was denied employment in the mess hall due to medical reasons. For the following reasons, Plaintiff's First Amendment retaliation claim is dismissed without prejudice.

"The First Amendment protects prison inmates from being subject to retaliation on the basis of inmates' filing of a lawsuit, lodging a grievance, or engaging in other protected free speech activity. In order to state a claim for First Amendment retaliation, a prisoner plaintiff must allege facts showing (1) that he engaged in an activity protected under the First Amendment, (2) that a prison official defendant took an adverse action against him, and (3) that the prisoner's First Amendment activity caused the prison official to engage in the adverse action." *Williams v. Osborn Med. Dep't.*, 2021 WL 151044, at *3 [D. Conn. Jan. 18, 2021, No. 3:20-CV-01474 (JAM)], *see, e.g., Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

However, it must be noted that the Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Id.*

at 295 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). In the current action, Plaintiff alleges, and Defendants concede, that the filing of a grievance is constitutionally protected under the First Amendment. (Defs.' MoL at 15.) However, Plaintiff has failed to plead any facts to demonstrate that his denial of employment in the mess hall was due to him exercising his right of filing a grievance. In fact, in his own Amended Complaint, Plaintiff attributes his own injuries and disabilities as the reason for not being placed in the mess hall. (Am. Compl. at 11-12.) ("I received a letter from Q. Quick, Supervisor Inmate Greivance Program, saying based on the injuries to both left and right arm, I would not be cleared.") Further, Plaintiff had already received multiple rejections to his placement requests before even filing a grievance. (*Id.*)

Accordingly, Plaintiff's First Amendment retaliation claim is dismissed without prejudice.

### b. Eighth Amendment Claim

Plaintiff avers that Defendants deprived him of his Eighth Amendment liberty interest in employment programs at Sing Sing because Plaintiff was not placed in the employment program that he desired. For the following reasons, Plaintiff's Eighth Amendment claim is dismissed without prejudice.

To begin, the Constitution "does not mandate comfortable prisons..." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981). However, it is also true that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

In order to establish an Eighth Amendment violation, and inmate must show: "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the

8

defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970) (internal quotation marks omitted). The Supreme Court has also held that in establishing a defendant official's state of mind, one "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837.

Plaintiff alleges that he was deprived of placement in the specific program that he had requested, which in this case, was the mess hall. It is well settled that "in New York a prisoner has no protected liberty interest in a particular job assignment." *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996). It is crucial to note that Plaintiff was not denied employment all together. Plaintiff was provided alternative employment as a gym porter and his own dissatisfaction with his job placement does not rise to the level of an Eighth Amendment violation.

Additionally, Plaintiff has not pled sufficient facts to demonstrate the Defendants acted with a "sufficiently culpable state of mind" or "deliberate indifference" in denying Plaintiff's job placement request. *Gaston*, F.3d 156, at 164. To the contrary, Defendants had Plaintiff's health at the forefront of their decision-making process when denying him his request of employment in the mess hall. Accordingly, Plaintiff did not sufficiently allege an Eight Amendment claim in his Amended Complaint.

For the aforementioned reasons, Plaintiff's Eighth Amendment claim is dismissed without prejudice.[3]

---

[3] In his opposition to Defendants' motion, Plaintiff writes that that he "does not contest that he does not allege an Eighth Amendment claim." (Pltf.'s MoL at 6.) Even if Plaintiff did not intend for this statement to be construed as him abandoning his Eighth Amendment claim, Plaintiff did not sufficiently allege an Eight Amendment claim in his Amended Complaint as discussed above.

### c. Fourteenth Amendment Claim

Next, the Court addresses Plaintiff's Fourteenth Amendment claim alleging that he was deprived of his Constitutional right of due process when he was denied employment in the mess hall at Sing Sing. For the following reasons, Plaintiff's Fourteenth Amendment claim is dismissed without prejudice.

The Fourteenth Amendment states, in part, "…nor shall any state deprive any person of life, liberty, or property, without the due process of law…" U.S. Const. amend. XIV, § 2. "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). Further, "[m]erely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Id.* at 56.

Similar to his Eighth Amendment claim, Plaintiff's Fourteenth Amendment claim arises out of his denial of employment in the mess hall at Sing Sing. (Am. Compl. at 2.) Plaintiff alleges that this denial of employment was a deprivation of his protected liberty interests without the due process of law. (*Id.*) The Supreme Court has identified two ways in which a person's liberty interest could be implicated in a way that arises to the level of an Eighth Amendment violation. Primarily, "[a] liberty interest may arise by virtue of the Due Process clause itself," *Laws v. Cleaver*, 140 F. Supp 2d 145, 149 (D. Conn. 2001) (*see Washington v. Harper*, 494 U.S. 210, 221-222, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990)) (Prisoners provided with a liberty interest in being protected from involuntary administration of antipsychotic drugs.) Additionally, "[a] liberty interest… may be created independently by the state," *Id.* (*see Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)) (even though Due Process clause independently does not create a liberty

interest in good time credits, Nebraska statutes manufactured a right to a shortened sentence through collection of good time credits).

The question thus turns to whether or not the Due Process clause itself or the New York statutory scheme provides prison inmates with a protected liberty interest in a specific program or job assignment. Irrespective of Plaintiff's incarceration in federal or state prison, he does not enjoy a protected liberty interest in a job assignment. *See Frazier*, 81 F.3d 313, at 318 (addressing New York State inmates); see *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (addressing federal inmates). To reiterate, Plaintiff was not denied employment as a whole. He was merely denied employment in the specific assignment that he desired, in which he was consistently given a medical-related reason as to why he was unable to be assigned.

Also, like his Eighth Amendment claim, Plaintiff in his opposition concedes that he does not allege a Fourteenth Amendment claim. (Pltf.'s MoL at 6.) It is the Court's understanding that Plaintiff subsequently abandons his Fourteenth Amendment claim. Even if, like his Eighth Amendment claim, Plaintiff did not intend for that statement to abandon his Fourteenth Amendment claim, Plaintiff is unable to sufficiently allege a Fourteenth Amendment claim for the reasons discussed. Accordingly, Plaintiff's Fourteenth Amendment claim is dismissed without prejudice.

## II.  ADA and Section 504 of the Rehabilitation Act Claims

Plaintiff alleges that by denying him employment in the mess hall, Defendants violated the ADA and Section 504. The Court bifurcates its analysis of the motion with respect to Defendants Capra, Sequin, and Annucci, and Defendants Kachappilly, Rosario, Jackson, Malin, and Manuel. For the reasons that follow, the Court grants Defendants' motion to dismiss Plaintiff's ADA and Section 504 claims without prejudice to renew.

### a.  ADA and Section 504 Claims against Capra, Sequin, and Annucci

Plaintiff, in his Amended Complaint, brings his ADA and Section 504 claims against Defendants Capra, Sequin, and Annucci in their supervisory capacity under § 1983 of the Civil Rights Act. He asserts that Defendants Capra, Sequin, and Annucci created a "policy or custom" or a "persistent and widespread … custom and usage" of intentional discrimination within the DOCCS system. (Am. Compl. at 21, 24–25.) Plaintiff fails to demonstrate any personal involvement on behalf of Capra, Sequin, and Annucci with respect to his ADA and Section 504 claims. Plaintiff's allegations are based largely on their position in the DOCCS hierarchy. (Defs.' MoL at 7.)

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has gone further and held that "a plaintiff must plead and prove 'that each Government-official defendant, through the officials own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F. 3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937).

As previously noted, Plaintiff's initial argument is that Defendants Capra, Sequin, and Annucci violated the ADA and Section 504 by their mere positions within the DOCCS hierarchy. (Am. Compl. 21, 24–25.) However, "where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014); *see also Polk Cnty. V. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981).

Plaintiff additionally advances that Defendants Capra, Sequin, and Annucci did have personal involvement in his alleged discrimination through their correspondence with Plaintiff, mainly through their review and affirmation of Plaintiff's grievance investigation. (Am. Compl. 21, 24–25.) This Court has previously held that "allowing suits to proceed against all of the officers who reviewed an inmate's appeal in such a situation would improperly impose supervisory liability, conflicting with the clear mandate of *Iqbal* and many years of Second Circuit case law." *Jamison v. Fischer*, No. 11 CIV. 4697 (RJS), 2012 WL 4767173, at *5. Thus, Plaintiff's contention is without merit.

Lastly, Plaintiff contends that Defendants Capra, Sequin, and Annucci created a "policy or custom" or a "persistent and widespread … custom and usage" of intentional discrimination within the DOCCS system. (Am. Compl. at 21, 24–25.) Even when reading his Amended Complaint in a light most favorable to him, Plaintiff fails to include any factual allegations as to how Defendants created such an environment.

For the aforementioned reasons, Plaintiff's ADA and Section 504 claims against Defendants Capra, Sequin, and Annucci are dismissed without prejudice.

### b. ADA and Section 504 Claims Against Defendants Kachappilly, Rosario, Jackson, Malin, and Manuel

Finally, the Court addresses ADA and Section 504 claims against Kachappilly, Rosario, Jackson, Malin, and Manuel. (Am. Compl. at 3.) The Amended Complaint alleges that Plaintiff was discriminated against and excluded from participation of Sing Sing's employment program due to his disability. The Court dismisses Plaintiff's ADA and Rehabilitation Act claims without prejudice.

To start, the ADA and Section 504 of the Rehabilitation Act "impose identical requirements," so this Court will address them simultaneously. *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). Congress enacted the ADA in 1990 with the goal of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Plaintiff's claim stems specifically from Title II of the act. Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to the rules, policies, or practices… meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). A "public entity" encompasses "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* § 12131(1)(A)-(B). State prisons are undoubtedly public entities in which both the ADA and Section 504 apply. *See Wright v. N.Y. State Dep't. Corr. & Cmty. Supervision*, 831 F. 3d 64, 72 (2d Cir. 2016).

In order to establish a claim under Title II, a prisoner in New York must demonstrate "(1) that he is a qualified individual with a disability; (2) DOCCS is an entity subject to the [A]cts; and (3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Id.*

For the purposes of this motion, both parties stipulate to the fact that Plaintiff is a qualified individual with a disability, and that these provisions of the Acts (*i.e.*, ADA and Section 504) apply to him. (Defs.' MoL at 12.) The parties also agree to the fact that Sing Sing Correctional Facility

is bound by the Acts. (*Id.*) Defendants, however, dispute the third prong that Plaintiff was excluded or otherwise discriminated against from participating in Sing Sing's services and programs. (*Id.* at 13.)

In regard to the third prong, the Second Circuit has held that discrimination "can include failure to make a reasonable accommodation for the inmate." *McFadden v. Noeth*, 827 F. App'x. 20, 28 (2d Cir. 2020). Also, "[a] plaintiff who is asserting a claim based on failure to provide reasonable accommodations must establish he or she 'as a practical matter was denied meaningful access to services, programs, or activities to which he or she was legally entitled.'" *Lee v. Korobkova*, No. 20 CV 10311 (VB), 2023 WL 2413933, at *8 (S.D.N.Y. 2023) (quoting *Wright*, 831 F.3d at 72).

Even when reading Plaintiff's Amended Complaint in a light most favorable to him, his complaint is completely void of any factual allegations supporting claims he was excluded from participation in or that denied "meaningful access" to the prison activities and programs. His only assertion is that he was denied access to the specific employment program that he desired. Plaintiff's own complaint states that he was afforded the opportunity to work and was assigned to the correctional facility's gymnasium as a porter for both the morning and evening hours. (Am. Compl. at 54.) Although Plaintiff makes consistent mention of his denial from employment in the mess hall, he fails to allege that he was denied employment as a whole, and as previously established, "in New York a prisoner has no protected liberty interest in a particular job assignment." *Frazier,* 81 F.3d at 318.

Accordingly, Plaintiff's ADA and Section 504 claims against all Defendants are dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in its entirety without prejudice. Specifically, the Court dismisses Plaintiff's First Amendment, Eighth Amendment, Fourteenth Amendment, and ADA and Section 504 claims against Defendants Kachappilly, Rosario, Jackson, Malin, Manuel, Sequin, Capra, and Annucci.

*Pro se* Plaintiff is granted leave to file a Second Amended Complaint. Plaintiff will have until May 12, 2025 to do so, consistent with this order. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the Amended Complaint, and so any claims they wish to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, Defendants are directed to answer or otherwise respond to the Second Amended Complaint by June 3, 2025, and the parties are directed to confer and file a Case Management Plan and Scheduling Order (blank form attached) by June 30, 2025.

If *pro se* Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice and the case will be terminated. The Clerk of Court is kindly directed to terminate the motion at ECF No. 49. The Clerk of Court is directed to mail a copy of this Opinion to *pro se* Plaintiff and show service on the docket.

**SO ORDERED:**

Dated: March 31, 2025
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

**SECOND AMENDED**

**COMPLAINT**


Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name    Last Name    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State    Zip Code

Defendant 2:

First Name    Last Name    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State    Zip Code

Defendant 3:

First Name    Last Name    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State    Zip Code

Defendant 4:

First Name    Last Name    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State    Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____